I please the court. I am Terry Meier. I am both the plaintiff and the defendant. I would like to reserve five minutes, if I may please. Personally, I think this is a relatively simple case. The facts are not in dispute, if you really look at the facts. And this isn't a case where both sides on the appeal have a discrete set of cases where one side says you need to look at cases 1 through 10. Others are saying you need to look through cases A through G. We're basically talking about the same cases here. Now, we may differ in how we interpret those cases, but these are the same cases. And finally, we're not trying to convince this court to make new law or issue some sort of novel ruling on the existing law. Because I'll tell you, this case involves the basics of medical care. It goes back to the very Hippocratic oath. This isn't a malpractice case. This is a breach of fiduciary duties, conflict of interest case under California law, which has very, very broad and extensive disclosure issues. Law, I should say. This is a case under California Constitution Article I, Section 1, both for the Wendlandt case for a patient autonomy rights and because of the 10th cause of action for privacy rights. Now, autonomy rights. California, as we know, is cited in the verified complainant. It was cited in the briefs. The legislature finds and declares that every person having ultimate responsibility for decisions respecting his or her own health care also possesses a concomitant right to access the complete information respecting his or her condition. And when the Supreme Court decided conservatorship of Wendlandt, which states that a citizen's personal autonomy rights are guaranteed by the provisions of Article I, Section 1 under the California Constitution, this raises enormous disclosure requirements of fiduciaries. And this is a case when you look at the various duties that these people owe as fiduciaries. The VA admits these fiduciary duties. They failed in those fiduciary duties. I had to sue to get my own medical records. I had to sue to get my test orders and results. I have a condition where I have a very serious tumor, which goes through a progressive stage to cancer. It always ends up as cancer if you live long enough and it isn't treated. It goes through a tubular stage as far as the polyps or the tumors. Then when it reaches another stage, it's called tubulovilus, and then it ultimately becomes villus, and then it becomes cancer. One of the things that happened in here was the VA provided medical records to me where initially they said, Mr. Meyer, you only have tubulovilus adenoma in your rectum. This is that very large tumor that was found in my rectum over six years ago, six years ago now. Later on, over a year later, they give the VA medical records that say, Mr. Meyer, you've got tubulovilus adenomas throughout your entire colon, and that means the ascending, that means the transverse, that means the descending. They found them in the cecum. To this very day, they have never answered a single question as to why this discrepancy in my records. Yet they have the gall to both tell the court, and in their response to the Federal Courts Claim Act claim, they have the gall to claim that we gave you the type of service that the VA is supposed to give to veterans and that we met all of the standards of care. And that's on the issues of both document production. That's on the issues of answering my questions. As fiduciaries, this is something all of us in this courtroom know something about, because our duties as attorneys to our clients are very, very similar to what these doctors' duties are to their patients. But there's one major difference that you will never, ever see in an attorney malpractice case, and that's the fact that we're being sued because of a breach of fiduciary duty where there's a financial loss. These breaches of fiduciary duty that occur in this case, that have occurred in these veterans' cases, they have to do with patient safety. Every issue that you see in this case ultimately comes down to patient safety. You can't have patient safety if you don't have people who are fulfilling their fiduciary duties. They go hand in glove. You can't have it. Now, in this particular case, I think we have made a very nice presentation in our briefs as to exactly what happened here. And I would like all of you to notice the government's brief. I don't really see any great questions in the government's brief about the interpretation of the law that's being presented, and I certainly don't see a single issue presented by the government where they're questioning the facts that are presented before this Court. So I'm going to... Doesn't it come, you know, you have laid out the particular facts and also your requests, you know, quite clearly, and you have this number of claims. So we need to sort through, I think, to figure out if the district court was correct in saying that there's not, in effect, a State law claim, you know, for these things in terms of a tort claim. So I had one in particular, and maybe you could just help me on this one, and that had to do with the medical... Well, there's two questions on the medical records. One is you have claimed that there was a failure to get your medical records. And so my question is, what's the basis for the underlying tort liability for that? Breach of fiduciary duty, Your Honor. I mean, actually, I agree with you that we have to look at this case and determine whether or not the court erred at the district court level. And they certainly did as far as these motions for summary judgment are concerned, and that would be the causes of action 4 through 9 inclusive. Now, I'm assuming you can for the time being. You can believe it or not, the district court recited that on the record on the evidence it claimed. And... Was the privacy claim? Yes, that's correct. And they just misconstrued what the claim was. They accepted counsel's claim of what the plaintiff was seeking as far as the issues involved in that. And quite frankly, if you look at the verified complaint, I verified that complaint for a reason. I fully ---- I was admitted to practice 32 years before ---- years ago before this Court. I understand what a verification means, and I attach that very long letter, which is Exhibit 1, because it summarizes everything that's happened to me for the last six years as far as the VA's position on records that I requested, et cetera. So my simple answer to your question is this, Your Honor. I think that we have made ---- we've established beyond a shadow of a doubt in our briefing that there are fiduciary duties that medical practitioners owe to their patients. And that's beyond a shadow of a doubt, and there were VA records that were offered at time of trial regarding those very issues. And as you can see from the letter that is attached to the complaint, the very first section says that the vital importance of ethics in health care practitioners are words of that effect, and it immediately cites a Veterans Administration ---- Veterans Health Administration National Ethics Committee report, which gets into these fiduciary duties. So I'm watching my time here, and I'm saying I'm rapidly running out here.  And I say that we have answered that with a resounding yes, and the law has been there for a long time. I think your DePinto case will take care of the issue as to whether or not a Veteran under those circumstances can sue for a Federal Torts Claim Act claim, because DePinto says that the breach of fiduciary duty is a common law action. It is so in California, has been for years. And this recognition of the fact that doctors and health care practitioners owe fiduciary duties to their patient, that goes back over 50, 60 years as far as ---- And then the final thing is whether or not under these facts did these particular government employees breach fiduciary duties. And I would say that's just a slam dunk. Of course they did. I had to sue to get my records. They didn't answer my questions. They didn't properly give me the right type of peer review, because they went back and looked at the whole course of treatment, and they didn't correct this ultrasound situation that the VA's own expert says that that should be done immediately after you find a tumor of this size. They took over 17 months for that ultrasound. I'm going into my rebuttal. I'll answer any questions you want, but I want to save some time for rebuttal. Am I right in thinking that way? You are. You are exactly right. Thank you very much. Dalling, I'm an assistant U.S. attorney on behalf of Appellee United States. And this Court should affirm the district court's judgment. I want to focus on what happened in this case, give a little bit of a background to put in context Mr. Meyer's references to breach of fiduciary duties, which the government does not believe he has in fact established. Mr. Meyer had three colonoscopy procedures performed by VA doctor, Dr. Eddie Chung, and Dr. Chung met with Mr. Meyer before and after each of these procedures. Prior to each of these procedures, Mr. Meyer was informed by Dr. Chung of the potential  I'm not quite hearing. Can you pull the mic down? Sorry, I'm short. Thank you. Can you hear me now, Judge Fletcher? Yes. Thank you. I thought, unless I'm missing something, we're not here on the merits, but we're here because it was dismissed for jurisdictional reasons, correct? Well, two things. One, there was a dismissal for jurisdictional grounds at the summary judgment level. So the district court ruled in summary judgment order with regard to the jurisdictional grounds. Correct. With regard to? Secondly, there was a bench trial. Right, on the remaining claim. Correct. Okay. Yes. Which ones are? What are you referring to now? The bench trial? I was trying to yes. Well, these facts animate both, but specifically with regard to the decisions on the at the bench trial. Okay. So I wanted to put in context some of the fiduciary duties that Mr. Meyer was referring to. And again, to reiterate that the government does not agree that Mr. Meyer has established that there were, in fact, breaches of any fiduciary duties, and if he were to, that he can link that up to the damages that he is claiming in this case, which are purely emotional damages. As Mr. Meyer stated himself, this is not a malpractice case. This is a case where he's claiming emotional damages for his alleged breaches of fiduciary duties and his alleged allegations that Dr. Chung did not provide him with informed consent prior to performing these three colonoscopy procedures that are part of the factual basis for this case. Counsel, he does make an allegation as to monetary damages also. Is that not correct? That's not correct. Several times during the trial, and prior to the trial, Mr. Meyer made clear to the Court that he was seeking emotional damages. He made reference to monetary damages that he would attempt to collect potentially if he were to win in terms of a bill of costs. But he made very clear to the Court that it was emotional damages that he was seeking, not monetary amounts for his emotional damages, not wage loss or other types of monetary damages. So this case is about emotional damages. And in several instances, he's not able to link up the case law that he can recover for emotional damages in the scenarios that he's raising. In the claims that he's raising and in the ways that he has presented those claims in his complaint, he's not established that he can recover. And that's also parallels the fact that he cannot recover for damages for, and this gets to the bench trial issues where he's claiming that he did not get informed consent from Dr. Chung, he can't recover for theoretical risks he claims weren't communicated to him at the time of the informed consent. So this case is a lot about what was presented to Mr. Meyer and his insistence that at each stage he wasn't given enough information. He said that he had to sue to obtain his medical records. That's not accurate. He was given medical records time and again from the VA. The miscommunication there came from a situation where it was very difficult for the VA to determine what he was looking for. He would send very long letters to the VA. He attached one of those letters to the executive record. He referenced it in his opening. It was hard to determine what he was, in fact, looking for. But the VA did provide him years and years of his medical records and did attempt to work with him to get him the records that he was seeking. But it was very difficult to make those determinations. It's not accurate that he had to sue the VA to obtain his medical records. Counsel, can I turn you to the Sovereign Immunity Holding? And there the district court held that for purposes of the waiver under 1346, it pertains only to people, individuals, not corporations, and that that's the analysis and the lens it had to view California law through. And in support, it cited our Adams decision. But Adams, as you know, was decided under a different section, 2761. And I just want to hear your argument for why that holding should be extended to 1346, given it's a different context, it's a different statute, and neither side, to my recollection, actually cited as a case dealing with 1346 on this issue. Okay. Well, I think that the Adams case. So you've got a novel question of law, I guess, I'm interested in. Okay. Well, the Adams case, though referencing a different area of the Federal Tort Claims Act, it was with regard to Westfall certifications. Right. It specifically addressed whether or not a corporation could be considered a person so that they could come under the umbrella of the sovereign immunity that was provided to the government in that context. But I think that it would be discordant to not to look at one area of the Federal Tort Claims Act where persons excludes corporations, and then to look at another area of the Federal Tort Claims Act where persons would include a corporation. And I think the logic in Adams, specifically the rationale that, quote, several contextual features of the Federal Tort Claims Act indicate Congress meant persons, quote, to apply only to natural persons. That reference is to several contextual features of the FTCA. That reference is not restricted to the portion that deals with Westfall certification. So I think that reading through Adams, another paragraph here in the Adams decision, in addition, Section 2679b2 of the FTCA, which excludes certain suits from coverage, states that immunity does not extend to a civil action brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized. This section speaks in terms of an individual, not a corporate entity. So I think the rationale behind Adams, though admittedly it does pertain to a different context or a different portion of the FTCA, is certainly extendable to another portion of the Federal Tort Claims Act, that being whether or not the United States as a person needs to be found liable under State tort law in order for Mr. Meyer in this context to be able to assert tort liability against the United States. One of the concerns, of course, with Dr. Chung's background and in the settlement with the Medical Association, which the district court seems to, in effect, give Dr. Chung a free pass because there was this settlement and therefore he didn't have to disclose anything, isn't that precisely what you would want to know if you're a patient in terms of the breach of a duty and a kind of a full disclosure? There is no law in California, statutory or decisional, that requires a patient or that would have required Dr. Chung to volunteer this information, this information that he was on probation, a probation, by the way, that had been completed by the time Mr. Meyer went in in June of 2003 for his third colonoscopy because the probation was a three-year period which concluded in April of 2003. But there's no California law that would have required Dr. Chung to have stated to Mr. Meyer that he was on probation. As the district court indicated, paraphrasing the district court, he was not, quote, he was not required to wear this on his sleeve like a scarlet letter. And I think if we, if the district court looked at the California Medical Board and said, hey, they did not require Mr. Meyer to provide this information to prospective patients. And they are, the California Medical Board, with its expertise, they would be in the best position to determine whether this was the type of information that would have to be disclosed to a patient. And keep in mind in this particular situation, this was about misrepresentations and the facts of the record that Dr. Chung had good reasons to, for his mistakes and his misstatements. These were not, this was not a situation where his medical abilities were being called into question, whether or not he was not skilled at colonoscopies. That might have been an entirely different situation for the California Medical Board, where they maybe would have required him to reveal that information to a patient prior to providing services to that patient. But if we just extend the rationale or if we extend that into a reality situation, if we were to require doctors to reveal their malpractice history, their professional backgrounds, et cetera, I think we just open up a domino effect of all the types of information you would have to have. You'd have to stage an initial meeting with your doctor prior to going in to see the doctor about what ails you. But we don't have to go that far, though, counsel, and find as a matter of law that there's no duty here. We just have to simply find that the district court did an error in determining that on this record there was no duty established by plaintiffs. Yes. I think that looking at the California law and the statutory and decisional law, the district court did not err in stating that there was no duty for Dr. Chung to disclose this type of information to Mr. Meyer. But you're not asking us to hold as a matter of law that that's you don't need to in order to win, establish that principle chiseled into the marble around the courtroom. You just need to say in this case there was an absence of proof sufficient to support Correct. Yes. In this case. In this case, that is the particular facts of this case. That is what the district court found. Counsel, in this record, does it show what his malpractice had been in the past? Did it relate to surgeries on the colon? No, Judge Alger. It did not relate to surgeries on the colon. And that information is in the record. It was included. I'm sorry I can't refer you to a specific page, but the prior malpractice in 1989 was not related to colonoscopy procedures. That information is in the record. If there are no further questions. All right. Thank you. Let's put to rest a few things that were said. You have before you as part of the evidence in this case the California Med Board decision. It was ordered on March 24th of 2000. It was effective, the decision, April 24th of 2000. It was a three-year probation. He was on probation during all but two of the times that he met with me. And contrary to what counsel would like you to believe, he was on probation at the time of all the first two colonoscopies. The malpractice in the past, Judge Fletcher, the reason why that malpractice was relevant in this case, it was informed consent, but more so what counsel just doesn't want you to hear is the fact that I'm an attorney. This guy perforates me in December of 2002. I meet with him on January 27th of 2003. The very first thing out of my question or the very first question out of my mouth is how many times have you ever perforated somebody in the past, et cetera. And I started really digging into his background, and I asked him how many times he was sued. And we see he forgot the trial transcript. And he said once. Now, I proved at time of trial he was sued twice. I apologize. It's not part of the record. He's been sued at least four times. I have certified copies of two other lawsuits which predated all this. I didn't know these lawsuits at time of trial, although they were discussed at time of trial, because they were referred to in the Scholarly Network, where they indicated that there was an action that had been filed in 1992. It was pending at the time that he went and applied for staff privileges at one of the hospitals. We've since filed none. But more importantly, what counsel doesn't address is the fact that these questions were asked of this man, and he said he had only been sued once. I asked him about the circumstances of the lawsuit. He explained to me that he was getting ready to leave, and some friend of his asked him, can you come in and fill in? There was an opening. He needed help. And Dr. Chung wasn't even scheduled for the surgery. And he was sued because something happened, and he was on the operating report. I'm an old-time attorney. I don't normally do medical malpractice cases, but I do know that any attorney worth their salt is going to sue everybody who's on an operating report, because you don't know at the time who did what to whom. And so he told me, he told me the safest thing he could possibly have told me, because I wouldn't go out and investigate something like that. And I trusted him, because remember, he was trying to get my permission at that meeting in January for a third colonoscopy from a doctor who had perforated me already, and it was big-time pain for him. I had a big offense to this idea that I wasn't damaged. I didn't weigh these damages. And at the time, and this is on ER-6, this is Judge Alsop's quote. This resulted in Frankenstein-type incisions, stitches, all up and down his stomach and side. He was in the hospital for 10 days recovering. He testified that the pain and the weakness and the loss of weight and all this is entirely credible. And the Court accepts that. There is no doubt that Mr. Meyer went through excruciating pain both before and after the remedial surgery. This is a situation where these you have faithless fiduciaries. And I'm not going to paint the whole VA as black, but these particular employees didn't do their jobs. When I called that the senior management, and those are the only people I communicated with, it was senior management. When I communicated that to senior management, they did nothing. They did nothing, even though they admit that they're fiduciaries. Now, as to this issue as to whether or not we can collect emotional distress damages, I would refer the Court to our reply brief at page 4. That's the Scripps Clinic v. Superior Court case, where the Court held that abandoning a patient was a breach of fiduciary duty and the clinic could be liable for emotional distress. Now, I'm not conceding that all I'm seeking is emotional distress damages, because when you look at the verified complaint and you look specifically at the second cause of action, which has to do with the perforation, you'll see that I stayed in there about all the pain and suffering that I went through, et cetera. Thank you very much for this opportunity to argue this case before this panel. Thank you, Mr. Gowling. I also thank Ms. Gowling. The case just argued, Meyer v. United States, is submitted.
judges: Fletcher, McKeown, Gorsuch